# EXHIBIT 1

②

Form To Be Used By A Prisoner In Filing A Complaint
Under The Civil Rights Act, 42 U.S.C. {}1983
In The United States District Court For The District OF Delaware

(1) Robert W. Hassett 3rd SBI NO: (337363) .}
P.O. Box 500, Georgetown, DE 19947......... }

(2)_____....}

_____.....}    (Case Number)____0 5 - 8 5 1

(Each named party must be listed, and all names must ..}
be printed or typed. Use additional sheets if needed).....)

(1) Correctional Medical Service...............}    Civil Complaint
(2) Dr. Roberta Burns ..............,.............}
(3) Nurse Practitioner Francis ....................} .. Jury Trial Request
(4) Unknown Nurse for C.M.S.....................}
(5) Stanley Taylor ...................................}
(6) Richard Kearney................................,...}
        (Names of Defendant
(Each named party must be listed, and all name must
be printed or typed. Use additional sheets if needed)

1. Previous Lawsuits
        A. If you have filed any other lawsuits in federal court while a prisoner, please list the caption and
case number including year, as well as the name of the judicial officer to whom it was assigned:

_____

_____

_____

_____



DEC  8 2005

**II. Exhaustion Of Administrative Remedies**

In order to proceed in federal court, you must fully exhust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution? ..Yes..No

B. Have you fully exhausted your administrative remedies regarding each of your present claims? Yes .. No

C. If answer to B. is Yes:

1. What steps did you take? I continued to notify medical of issue, as well as filed grievances to no avail.

2. What was the results? Medical staff refuses to treat issue and was denied on grievances.

D. If your answer to B is no, explain why not: _____

_____

**III. Defendants** (in order listed on the caption)

(1) Name of first defendant: Correctional Medical Service
Employed as Medical at Sussex Correctional Inst.
Mailing address with zip code: P.O. Box 500, Georgetown, DE 19947, and 12647 Olive Boulevard, St. Louis, MO. 63141

(2) Name of second defendant: Dr. Roberta Burns
Employed as Doctor at Sussex Correctional Inst.
Mailing address with zip code: P.O. Box 500, Georgetown, DE 19947

(3) Name of third defendant: Nurse Practitioner Francis
Employed as nurse Practitioner at Sussex correctional Inst.
Mailing address with zip: P.O. Box 500, Georgetown, DE 19947

_____

(list any defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

(4) name: unknown nurse for CMS medical employed as: Nurse at: Sussex correctional Inst. Address: P.O. Box 500, Georgetown, DE 19947

(5) Stanley Taylor
Employed as: Commissioner of prisons at: central administration bldg. Address: central administration bldg. 295 McKee road, Dover, DE 19904

(6) Name: Richard Kearney employed as: Warden at: Sussex Correctional Inst. Address: P.O. Box 500, Georgetown, DE 19947

## IV. Statement of claim

(Statement as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite cases or status. Attach no more than three extra sheets of paper if necessary.)

1. (2) On/or about June 6, 2005, the plaintiff suffered a dislocated knee with possible torn ligaments/muscles. This injury occurred at the prisons Gym. (3) The plaintiff had another inmate help reset the knee. At which time the gym officer escorted the plaintiff to the medical office. (4). At which time the unknown nurse told the plaintiff that he was stupid for receiving this injury. And that she saw nothing she could do. At which point I was told to leave medical.

(5) I could not walk or even apply pressure on my injured knee. Another inmate had to assist me to my housing unit. On the way Lt. Pain saw the plaintiff and told him he would get him crutches. (6) That evening Lt. Pain obtained crutches. (7) That evening Lt. Pain obtained crutches for the plaintiff. Following a month of complaints for existing pain. (8) The plaintiff had been seen by, Nurse Practitioner Francis. Francis told the plaintiff she would order x-rays. And if there was no problem she was taken the plaintiffs knee braces. She took the crutches at this time.

(9) After the x-rays, Francis saw the plaintiff about 3 weeks later. Where upon, Francis did not take the plaintiffs knee braces. But said injuries happen. And she could do nothing for me. (10) After another week or so, the plaintiff's knee popped out on him again. And the officer said that he had to put in a sick call, because it was not life threaten. (11) So the plaintiff did as he was told. (12) And the plaintiff did as he was told. And when the plaintiff went to medical. The unknown nurse told the plaintiff she did not believe him because she did not read in the medical chart that someone from medical had re-set the plaintiffs knee. (Officer Thomas witness this)

(13) the plaintiff continued to put sick call slips in to medical. And finally a nurse put the plaintiff on to see Dr. Burns, which said that the x-ray does not depict muscle and tendon tissue-was plaintiffs' response. (14) The plaintiff notified Dr. Burns of the constant pain and how his knee gives out or pops out at times. She said there was nothing she could do for that. At which point she ordered new knew braces, because the ones previously given to the plaintiff were of the wrong sizes. She also gave the plaintiff 800mg of motion, which do nothing for the pain. (15) The medical staff in this case did

## IV. Statement of claim continue

not fulfill their duties in providing proper health care to the plaintiff. Resulting in sever pain and possible long-term damage to the plaintiffs knee.

_____ (16) Correctional medical services are as liable for this incident as well. Correctional medical services are too accountable for the liability involved. Do to the facts that medical staff members hired were in any way sufficiently qualified to practice this type of responsibility required in medical treatment resulted in negligence of assistance in treatment service to inmates healthcare at SCI. (17) Stanley Taylor is responsible for the plaintiffs pain and suffering do to his no bid contract with C.M.S. Had Stan Taylor done his job and put the contract out for bid. A more capable and responsible medical staff would be running treatment for S.C.I. Therefore; the plaintiff would have had proper treatment. (18) Richard Kearney also is to blame for the plaintiff's pain and suffering, Warden Kearney could have looked into the complaint about medical long ago. And presented a solution to the problem. Instead his actions were to look the other way. Leaving plaintiff to suffer at the hands of C.M.S. medical.

## V. Relief

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

_____ (19) The plaintiff request that the court order the plaintiff be taken to outside medical treatment where his knee can be examined by a specialist.

_____ (20) Where the muscles and tendons can be examined. And the plaintiff can be treated for his pain. The plaintiff wants to be awarded $161,000.00 for his pain and suffering to date. In addition, to be awarded 1.8 million dollars for the mental, emotional, and physical pain the plaintiff will have for the rest of his life. (21) The plaintiff's medical recovery was not according to any reasonable standard of health care and insurance guidelines, provisional, or regulations. (22) The injury results will sustain permanency with added medical conditions resulting, such as post-trauma aspects in and to injured areas of the alignments of ligaments, scared tissue, and muscle structure formation.

_____ (23) And suffering to date included as awarded amount of 1.8 million dollars for the on set of pre-existing damages and additional damages of mental health stress, emotional, and physical damages to the plaintiff. (24) In evaluation of long term suffering

## V. Relief continue

from this medical condition will serve as means to prompt continues treatment
maintaining remedial medical intervention.

I declare penalty of perjury that is true and correct.

Signed this ___6___ day of ___Dec___, 2 __005__.

_Robert W. Hassett III_
(Signature of Plaintiff 1)

_____
(Signature of plaintiff 2)

_____
(Signature of Plaintiff 3)

(3)

In The United States District Court
District of Delaware

ROBERT W. HASSETT III.,          )        C.A. NO.
PLAINTIFF                         )              05 - 851

                                 )
                                 )

                                 )

        V.                       )
                                 )   CIVIL COMPLAINT
1) CORRECTIONAL MEDICAL SERVICE  )
2) DR. ROBERTA BURNS             )   
3) NURSE PRACTIONNER FRANIS      )
4) UNKNOWN NURSE                 )
5) STANLEY TAYLOR                )
6) RICHARD KEARNEY               )

                                 )

        Respondents

MEMORANDUM OF LAW AND BRIEF
IN SUPPORT OF 42 USC. §1983
PLAINTIFFS OPENING BRIEF

DATE: 12-6-05

ROBERT W. HASSETT III
PRO-SE
P.O. BOX 500
GEORGETOWN, DE 19947

# TABLE OF Contents

PG

TABLE OF CONTENTS ................................................................. I

TABLE OF AUTHORITIES .......................................................... II

STATEMENT OF FACTS ............................................................ III

ARGUMENT I ........................................................................... 1

ARGUMENT II .......................................................................... 4

ARGUMENT III ......................................................................... 5


Conclusion .................................................................................. 5

Appendix;
(Could not fulfill appendix until documents are presented to plaintiff) ....

## TABLE OF AUTHORITIES

CITE                                                                    PG

COLEMAN V. RAHIJA 114 F3D 778...................................... 3
ESTELLE V. GAMBLE 429 US. 97........................................ 2,
FARMER V. BRENNAN 511 US. 825...................................... 2,
ISBY V. CLARK 100 F3D 502.............................................. 1,
ITATHAWAY V. COUGHLIN 37 F.3D 66 ................................. 2,
JORDAN V. DOE 38 F.3D 1564 ............................................ 2,
NAPOLI V. US. 32 F.3D 30 ................................................. 3,
NORMAN V. TAYLOR 25 F.3D 1262.................................... 2,
POPE V. SHATER 86 F. 3D 90 ............................................. 1
RHODES V. CHAPMAN 452 US. 337 .................................... 1, 2
WILSON V. SEITER 501 U.S. 294......................................... 2,
VOEHL V. DALSHEIM 88 F.3D 86 ........................................ 1,
YANKANWHICH V. WHARTON 460 A 2D 1326....................... 5

8TH U.S. AMENDMENT.................................................... 1, 2, 4, 5
14TH U.S. AMENDMENT.................................................. 2, 5

## STATEMENT OF FACTS

On/or about June 6, 2005 the plaintiff received a knee injury. Upon receiving injury the plaintiff went to medical where upon nurse turned him away. Her reply was one of disregard. Saying plaintiff was dumb and she could not help him. After many request, by plaintiff, he was seen by nurse practitioner Francis, who once again told plaintiff she could not help him. Plaintiff continued to complain and after many complains and grievances. He was permitted to see Dr. Burns. And again he was told there was nothing they could do. Even after hearing of the pain and suffering. It was to no avail, even after other grievances.

Now comes the plaintiff in § 1983 form. Seeking relief.

## ARGUMENT I

The plaintiff received inadequate medical care, amounted to "deliberate indifference" to the plaintiff violating his 8th amendment rights. The medical staff employed by (C.M.S) correctional medical service, deprived the plaintiff of adequate medical treatment. Resulting in "cruel and unusual" punishment.

On/Or about June 6, 2005, the plaintiff suffered a dislocated knee with possible torn ligaments and muscles. This injury accrued at the prisons gym. The plaintiff had another inmate help relocate the knee. At which time the gym officer escorted the plaintiff to the medical office. At which time the unknown nurse told the plaintiff, "that he was stupid for receiving this injury". And that she saw nothing she could do. At which point plaintiff was told to leave medical.

Plaintiff told nurses that he could not walk or even apply pressure on his injured knee. The nurses still said they could do nothing. Another inmate had to assist the plaintiff back to his housing, Based off the "seriousness of pain" the plaintiff. This shows an ("unnecessary and wanton infliction of pain as discussed in Rhodes v. Chapman 452 U.S. 337 (1981) by the medical department of Sussex correctional Inst.

After a month of complaints of pain; plaintiff saw a Nurse Practitioner Francis. Francis told plaintiff she would order x-rays. And if there was no problem, she was taken the plaintiffs knee braces. She took the crutches at this time. After the x-rays Francis saw the plaintiff about 3 weeks later. Where upon Francis did not take plaintiffs knee braces, but she said injuries happen and she could do nothing for the plaintiff. At this point the plaintiffs injury's were causing extreme pain and was causing him to suffer mentally. Do to the plaintiffs mental illness, Francis was responsible for the condition(s) and had a "sufficiently culpable state of mind".

In other words, the official knew of the condition and was aware that the condition presented a substantial risk of harm. See : Isby v. Clark 100 F.3d 502 (1996) Pope v. Shater 86 F.3d 90 (1996) Voehl v. Dalsheim 88 F.3d 86 (1996)

After a week or so, the plaintiff's knee pooped out on him again. And the officer said that he had to put a sick call in, because it was not a life threatening issue. So the

plaintiff did as he was told. And when the plaintiff went to medical. The same unknown nurse told the plaintiff, "She didn't believe him, because she didn't read in the medical chart that someone from medical had relocated the plaintiffs knee. (C/O Thomas was present) This not only shows a deliberate indifference to the plaintiffs 8th amendment, but a deliberate act of inadequate medical care. Wilson v. Seiter 501 U.S. 294 (1991); Estelle v. Gamble 429 US. 97 (1976); Farmer v. Brennan 511 U.S. 825 (1994).

The plaintiff continued to put sick call slips in to medical. And finally a nurse put the plaintiff on to see Dr. Burns. The plaintiff had to file a grievance to finally see Dr. Burns. On / or about 10-18-2005 the plaintiff seen Dr. Burns. At which time Dr. Burns said that the x-ray was ok. Plaintiff responded that the x-ray does not depict muscle or tendon tissues. The plaintiff notified Dr. Burns of the constant pain and how his knee continues to pop out (Dislocated) and collapses when applying pressure. Dr. Burns said that nothing could be done. At which point she ordered new knee braces, because the ones previously given to the plaintiff were of the wrong sizes. Which plaintiff has not received as of date. She also gave the plaintiff 800 mg. of Motrin's, which do nothing for the pain in plaintiffs knee.

When Dr. Burns ordered the knee braces and 800mg Motrin, she recognized the plaintiff's injuries but disregarded his 8th and 14th amendments to proper medical care. Napoli v. U.S. 32 F.3d 30; Itathaway v. Coughlin 37 F.3d 66.

The medical staff in this case did not fulfill their duties in providing proper health care to the plaintiff. Resulting the plaintiff to be in extreme pain all day as well as causing his mental anguish to be crucial as well as critical. For the plaintiff suffers from mental illness. (Paranoia of others attacking him)

Therefore, with the norm of plaintiff's illness (Mental), this added injury brings about a new fear for his personal well-being. Therefore pushing his suffering to such a degree to deprive the plaintiff of any relief of pain and suffering. Norman v. Taylor 25 F.3d 1262; Jordan v. Doe 38 F.3d 1564. This is an "unnecessary and wanton infliction of pain as discussed in Rhodes v. Chapman 452 U.S. 337 (1981)

Without treatment, the medical staff left the plaintiff in server pain and suffering, physical, mentally, and emotionally. In turn causing fear for plaintiffs physical safety. Correctional medical services are to blame as well. Do to the fact, that they hired such

2

irresponsible and incompetent medical staff. To over see and assist in treatment of the inmates at S.C.I.

Even after all the complaints of medical mistreatment (CMS) continued to staff the same people, instead of firing them and hiring new staff. This is not just negligence, it is deliberate indifference to the inmates right to proper medical care <u>Colman</u> <u>v.</u> <u>Rahija</u> <u>114</u> <u>F.3d</u> <u>778.</u>

## Argument II

Commissioner "Stanley Taylor" is in turn responsible for the plaintiff's pain and suffering, as well as the mistreatment of plaintiff's injury. Taylor allowed (C.M.S) have the contract to provide medical care to (SCI) inmates, without a bid for the job. Taylor knew of complaints of malpractice against (CMS) and yet he disregarded them as moot.

Thereby, causing "deliberate indifference" to the welfare of my treatment as well as all other inmates. Coleman v. Rahija supra. Had Taylor done his job in the context it should then the contract for medical would have been placed to the best bid.

Thereby, given the concept that a different medical service would have gained the contract to provide medical care to us inmates. Thereby, given the possibility that a new medical company, along with different staff would be providing medical care to us inmates.

So, it goes to show that a different medical staff, very well would have treated the plaintiff for his injuries in a different manner. Where as now the plaintiff will more than likely suffer for the rest of his life. Taylor not only committed deliberate indifference, he violated the plaintiffs 8th amendment.

4

## Argument III

Warden Richard Kearney, also is at fault for the plaintiffs pain and suffering. The warden at some point sees all complaints, rather medical or otherwise.

Therefore, the warden was predisposed of the issues dealing with medical. The warden has the ability to address all issues within the prison he is looking over. Including medical departments.

When the warden of a prison disregards the health and safety of his inmates. He is committing wanton conduct. AS ;. Yankanwhich v. Wharton 460 A2d. 1326; [10] it's stated (....evidence indicates a conscious disregard on the part of defendant .... Shows an "I do not care attitude "which justified the wanton charge.)

That is just what the warden did. He didn't care. Because at no point did he order an investigation into the complaints. Warden Kearney left my medical Health and ultimately my physical safety to C.M.S. medical staff. Violating my 8th and 14th amendments.

Conclusion:

The plaintiff wants to be awarded $161,000.00; for pain and suffering as of date:_____ To be treated by a specialist for knee treatment, as well as proper testing for injury. Also, to be awarded $1.8 million dollars for the pain, suffering, physical inability's of the future limitations, and for the fear of safety as well as the mental health disturbance.

Date: 12-6-05

Signature: Robert Hassett

Print: Robert Hassett

5

# EXHIBIT 2

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| | RELATED ACA STANDARDS: | |
| PROCEDURE MANUAL | 36 | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:    INMATE GRIEVANCE PROCEDURE) | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: | | |
| EFFECTIVE DATE: _Revised 5/15/98_ | | |

I.   **AUTHORITY:**  DOC Policy 4.4

II.  **PURPOSE:**

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.  Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE:   Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III. **APPLICABILITY:**

All BOP employees, volunteers, persons or organizations conducting business with the BOP: all inmates under BOP custody or supervision.

IV.  **DEFINITIONS:**

A.   Bureau Grievance Officer (BGO):  A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.   Emergency Grievance:  An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C.   Grievance:  A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | 2  OF  7 |

D.    Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.    Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.    Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.    Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.    Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.    Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

>       Health Services Administrator
>       Director of Nursing
>       Charge Nurse
>       Chief Medical Officer
>       Medical Records Clerk
>       Mental Health Counselor
>       Chief Dental Officer
>       Dental Assistant

V.    PROCEDURE:

1.    Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.    All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3.  The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4.  The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5.  No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6.  All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7.  The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8.  Inmates are prohibited from submitting more than one grievance arising from a single incident.

9.  If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

### Level I (Informal Resolution):

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

### Level II (RGC Recommendation/Warden's Decision):

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

### Level III (The Final Decision):

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | 6 |

recommendation. Decisions by the Bureau Chief of Prisons a final and not open to grievant interpretation. The Bureau of Prisons will return his final decision and the grievance to the IGC for closure and monitoring for issues of compliance

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by t Warden/Warden's Designee. A copy of the grievance shall be se to the IGC upon receipt by the Warden/Warden's Designee. And th Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will b decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance doe not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO).  The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded.  If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II.  The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review.  If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review.  Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal.  This form must be given to the IGC who is responsible for tracking the status of each grievance.  The IGC will forward the appeal and grievance file to the BGO.  Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level.  NOTE:  The Bureau Chief of Prisons decisions are final and not appealable.


**Attachments**

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NOV 08 2000

William E. O'Neil,                    )
                                      )
              Plaintiff,              )
                                      )
      v.                              )
                                      )    C.A. No. 99-849-SLR
Rick Kearney, Jean Snyder,            )
Dr. Weiss, Karen Clark,               )
                                      )
              Defendants.             )

MEMORANDUM ORDER

I.    INTRODUCTION

       William E. O'Neil ("plaintiff") is a Delaware prison inmate

incarcerated at Sussex Correctional Institution ("SCI") in

Georgetown, Delaware.  The defendants are the prison warden and

three employees of Prison Health Services (collectively

"defendants").  Plaintiff filed this action under 42 U.S.C. §

1983, asserting that defendants violated his Eighth Amendment

right to be free from cruel and unusual punishment for the

defendants' failure to protect the plaintiff from an attack by

another inmate.  Plaintiff seeks compensatory and punitive

damages.  Procedurally, the court is faced with motions to

dismiss from defendants.

II.   FACTS

       The basis for plaintiff's complaint is the placement of a

violent inmate into his infirmary room on November 8, 1997.

Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states
that at 4:00 P.M. another inmate, Michael Hall, was brought into
the room with plaintiff. Apparently, Hall had assaulted another
inmate and was transferred to the infirmary for observation.
Plaintiff alleges that Hall has had similar problems in the past
as a result of his failure to take medication. The complaint
maintains that defendant Karen Clark, a psychologist in the ward,
was aware of Hall's problems and directed Hall to be placed in
the room with plaintiff anyway. Plaintiff further maintains that
Dr. Weiss, the mental health supervisor, had been treating Hall
and ordered him to be observed prior to these assaults. At
approximately 3:00 A.M., plaintiff was awakened by kicking and
beating from Hall. As a result, plaintiff required ten stitches.

Plaintiff contends that defendants violated his Eighth
Amendment rights by acting with reckless disregard for his safety
when they placed a violent inmate in his room.

Defendants move to dismiss the complaint for plaintiff's
failure to exhaust administrative remedies as required by 42
U.S.C. § 1997e(a).[1]

---

[1] Defendants also argue that plaintiff has failed to allege
facts which would state a claim for a violation of the Eighth
Amendment and that plaintiff's claim is barred by the applicable
statute of limitations. However, because the case is being
dismissed for plaintiff's failure to exhaust administrative
remedies, no discussion of the merits of plaintiff's claim is
warranted.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §

1997e(a), provides that

> [n]o action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as available are
> exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71

(1996)).  18 U.S.C. § 2636(g) defines "prison conditions" as

"...the effects of actions by government officials on the lives

of persons confined in prison...." Actions under this clause

relate to "the environment in which prisoners live, the physical

conditions of that environment, and the nature of the services

provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291

(3rd. Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the

defendants' actions fit under the purview of the statute. The

placement of a violent prisoner in plaintiff's room is certainly

an action that affected the environment in which he lived.

Because the action complained of is a "prison condition,"

plaintiff is required to exhaust administrative remedies, if any

exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner

grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2]  (D.I.~2)  In Booth, the court held that prisoners must exhaust administrative remedies available to them prior to filing a § 1983 action, whether or not the remedies provide the inmate-plaintiff with the relief desired.  206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3rd. Cir. 2000)).  By applying § 1997e(a) without exception, the policies underlying the exhaustion requirements are promoted, that is, the agency involved is given the opportunity to discover and correct its own mistakes and also conserve judicial resources.  Nyhuis, 204 F.3d at 75.

V.    CONCLUSION

Therefore, at Wilmington this 6th day of November, 2000,

IT IS ORDERED that the motions to dismiss filed on behalf of defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark are granted.

_____
United States District Judge

---

[2] Presumably this statement evidences that plaintiff thought the grievance process was only for prisoner and institution matters.

4

# EXHIBIT 5

1 of 1 DOCUMENT

**FRANK WHALEN, JR., Plaintiff, v. CORRECTIONAL MEDICAL SERVICES, DR. KEITH IVENS AND MELODY A. THORPE, Defendants.**

**Civil Action No. 02–246 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 21334*

**November 20, 2003, Decided**

**SUBSEQUENT HISTORY:** Complaint dismissed at *Whalen v. Ivens, 2004 U.S. Dist. LEXIS 9532 (D. Del., May 11, 2004)*

**PRIOR HISTORY:** *Whalen v. Corr. Med. Serv., 2003 U.S. Dist. LEXIS 14562 (D. Del., Aug. 18, 2003)*

**DISPOSITION:** [*1] Motion to dismiss complaint granted.

**COUNSEL:** Frank Whalen, Jr., Pro se Plaintiff.

Kevin J. Conners, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, Wilmington, Delaware. Attorney for Defendant, Melody A. Thorpe.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion Of Defendant, Melody A. Thorpe, To Dismiss Plaintiff's Complaint. (D.I. 35.) For the following reasons, the Court will grant Defendant's Motion.

### BACKGROUND

Plaintiff is an inmate alleging that various acts by Correctional Medical Services and its employees amounted to a deliberate indifference to his medical needs, and therefore, violated his *Eighth Amendment* rights. Plaintiff alleges that during his incarceration Defendant administered to him an excessive amount of the drug Nubain, leading to his "near death and paralysis." (D.I. 2.) Defendant is a nurse practitioner who was employed by Correctional Medical Services at the time Plaintiff was treated. By her Motion (D.I. 35), Defendant moves [*2] to dismiss Plaintiff's Complaint.

### STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, a court must "accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000)*. A court will grant a defendant's motion to dismiss only if it appears that the plaintiff could prove no set of facts that would entitle him or her to relief. A court is to construe a handwritten pro se complaint liberally, holding it to a less stringent standard than pleadings drafted by attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)*.

### DISCUSSION

Defendant contends that Plaintiff has not satisfied the notice pleading required of *Federal Rule of Civil Procedure 8(a)*. Specifically, Defendant contends that Plaintiff's Complaint does not state a claim of deliberate indifference amounting to an *Eighth Amendment* violation. Further, Defendant contends that Plaintiff's Complaint [*3] does not allege that she personally committed any acts amounting to a deliberate indifference to Plaintiff's medical needs. In response, Plaintiff contends that his Complaint sufficiently alleged acts demonstrating Defendant's deliberate indifference in administering excessive doses of Nubain thereby leading to his alleged injury.

In order to successfully allege a *Section 1983* action for failure to provide medical care under the *Eighth Amendment*, an inmate plaintiff must allege practices that violate "evolving standards of decency." *Estelle, 429 U.S.*

2003 U.S. Dist. LEXIS 21334, *3

*at 102*. Medical malpractice does not become an *Eighth Amendment* violation merely because the plaintiff is a prisoner. *Id. at 105.* Instead, the defendant's action must be said to constitute "'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id. at 106.* To meet this standard of deliberate indifference, the defendant must know of the inmate's condition and disregard an excessive risk of the inmate's health or safety. *Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).* Applying these standards, [*4] the Court will grant Defendant's motion to dismiss.

In his Complaint, Plaintiff alleges that "he was given an overdose of the Narcotic [sic] Nubain by defendants on 12-18-2000 at 2:30 P.M.; which led to plaintiff coming near death and paralysis." (D.I. 2.) Although this allegation sufficiently pleads an action for medical malpractice, an incident of medical malpractice does not amount to an *Eighth Amendment* violation simply because Plaintiff is an inmate. See *Estelle, 429 U.S. at 102.* Accordingly, even when viewing Plaintiff's Complaint under the liberal standards provided by *Rule 8(a)* and Estelle, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.

An appropriate order will be entered.

**ORDER**

WHEREAS the Defendant Melody A. Thorpe filed a Motion To Dismiss Plaintiff's Complaint (D.I. 35);

IT IS HEREBY ORDERED this 20 day of November, 2003, that Defendant Melody A. Thorpe's Motion To Dismiss Plaintiff's Complaint (D.I. 35) is GRANTED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE