IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT W. HASSETT, III, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 05-851-JJF |
| | : |
| CORRECTIONAL MEDICAL SERVICE, | : |
| et al., | : |
| | : |
| Defendants. | : |

Robert W. Hassett, III, Pro se Plaintiff.

Kevin J. Connors, Esquire, Wilmington, Delaware.
Attorney for Defendants Correctional Medical Service, Dr. Roberta Burns, and Nurse Practitioner Francis.

Stacey Xarhoulakos, Esquire, Deputy Attorney General, Delaware Department of Justice.
Attorney for Defendant Richard Kearney.

**MEMORANDUM OPINION**

December 7, 2006
Wilmington, Delaware

*Joseph J. Farnan Jr.*
Farnan, District Judge

Presently before the Court is State Defendant's Motion To Dismiss/Summary Judgment Pursuant To Rules 12(b)(1) And 12(b)(6) Of The Federal Rules of Civil Procedure with supporting memorandum (D.I. 27, 28), Plaintiff's Motion For An Order (D.I. 35), Motion Of Defendants, Correctional Medical Services, Dr. Roberta Burns and Nurse Practitioner Francis, To Dismiss Plaintiff's Complaint (D.I. 37), and Plaintiff's Motion To Compel/For An Order To Produce All Documents Of Discovery (D.I. 40). For the reasons set forth below, the Court will grant the Motions to Dismiss (D.I. 27, 37), and deny as moot the remaining motions (D.I. 35, 40).

## I. BACKGROUND

Plaintiff, an inmate housed at the Sussex Correctional Institute ("SCI") alleges that on June 6, 2005, he sustained a knee injury while in the prison gym. He alleges that he was taken to the medical office on that date, and that an unknown nurse said she saw nothing she could do and told Plaintiff to leave. Plaintiff alleges that he could not walk or apply pressure to the injured knee and that another inmate assisted him to his housing unit. Later that day, a correctional officer provided crutches to Plaintiff. Plaintiff alleges he complained of pain for a month, and that he was seen by Defendant Nurse

Practitioner Francis ("Nurse Francis"). Nurse Francis told Plaintiff she would order x-rays, and if there was no problem she would take Plaintiff's knee braces.[1] Plaintiff alleges that during the medical visit, Nurse Francis took his crutches.

Plaintiff saw Nurse Francis three weeks after the x-rays were taken. Nurse Francis did not take his knee brace, but said she could do nothing for Plaintiff. Approximately a week later, Plaintiff's knee popped out again. Plaintiff was told that because the injury was not life threatening he was required to "put in a sick call." When Plaintiff arrived at medical an unknown nurse indicated that she did not believe Plaintiff because there was no indication in the medical chart that his knee had been reset.

Plaintiff continued to place sick call slips and was examined by Defendant Dr. Burns ("Dr. Burns"). Dr. Burns indicated to Plaintiff that the x-ray did not "depict muscle and tendon tissue." Plaintiff apprised Dr. Burns of his constant pain and how his knee "pops out at times." Plaintiff alleges that Dr. Burns told him there was nothing she could do. Dr. Burns ordered a new knee brace and gave Plaintiff Motrin for pain. Plaintiff alleges that the medical staff did not fulfill

---

[1] Apparently Plaintiff wears a knee brace.

its duties in providing proper health care, and that this resulted in severe pain and possible long-term damage to his knee.

Plaintiff alleges that Defendant Correctional Medical Service ("CMS") is liable because it hired medical staff not sufficiently qualified to practice this type of medical treatment and it resulted in "negligence of assistance in treatment service to inmates healthcare at SCI." Plaintiff alleges that Defendant Richard Kearney ("Warden Kearney") also is to blame for his pain and suffering because Warden Kearney "could have looked into the complaint about medical long ago. And presented a solution to the problem. Instead his actions were to look the other way."

## II.   DISCUSSION

### A.   Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the Court assumes that all factual allegations in Plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx.

-3-

577, 579 (3d Cir. 2004). However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions." Id. A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Warden Kearney, CMS, Dr. Burns, and Nurse Francis filed motions to dismiss the claims raised against them. (D.I. 27, 37.) Warden Kearney moves for dismissal/summary judgment[2] on the basis that the Complaint does not establish or support Plaintiff's allegations that Warden Kearney deprived Plaintiff of his constitutional rights. More particularly, Warden Kearney argues that the Complaint fails to allege any personal involvement by him, the allegations in the Complaint do not meet the standard for deliberate indifference under the Eighth Amendment, the Complaint fails to state a claim upon which relief may be granted, the Eleventh Amendment immunizes Warden Kearney

---

[2] The motion for summary judgment is premature. Plaintiff is "entitled to discovery before being put to [his burden of] proof." Alston v. Parker, 363 F.3d 229, 233 n.6 (3d 2004). Therefore, the Court will deny State Defendant's motion, to the extent it should be construed as a motion for summary judgment.

-4-

from suit in his official capacity, and he is entitled to qualified immunity.

Defendants CMS, Dr. Burns, and Nurse Francis move for dismissal on the bases that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e, the Complaint does not contain facts that demonstrate Dr. Burns or Nurse Francis were deliberately indifferent to a serious medical condition, Plaintiff cannot prove any set of facts to demonstrate that CMS had a policy or custom that led the medical staff to deprive Plaintiff of necessary medical care, and CMS cannot be held liable under a theory of respondeat superior.

Warden Kearney, CMS, Dr. Burns, and Nurse Francis submitted exhibits outside the pleadings in support of their Motions to Dismiss. The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by the Court, the matter shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). The Court will not consider the exhibits submitted and will treat the motions as motions to dismiss pursuant to Fed. R. Civ. P. 12(b).

### B. Administrative Remedies

CMS, Dr. Burns, and Nurse Francis argue that Plaintiff failed to exhaust his administrative remedies as is required under 42 U.S.C. § 1997e(a) and, therefore, the complaint must be dismissed. Plaintiff responds that he has filed all procedures in seeking proper health care, including filing grievances, but he has been stonewalled by Defendants.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d. Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d. Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001

WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware Department of Correction administrative procedures provide for a multi-tiered grievance and appeal process. Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

The Court must accept as true the facts as plead in Plaintiff's Complaint. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) (citations omitted). Given that exhaustion turns on the documents related to Plaintiff's grievances, the Third Circuit has held that authentic documents may be considered without converting a motion to dismiss to a motion for summary judgment. Spruill v. Gillis, 372 F.3d at 223.

CMS, Dr. Burns, and Nurse Francis argue that Plaintiff makes no mention in his Complaint that he filed any grievances. Contrary to their position, the Complaint alleges that Plaintiff has fully exhausted his administrative remedies regarding each of

his claims. (D.I. 2, at II.) Additionally, documents submitted by Warden Kearny reveal that Plaintiff filed a grievance seeking medical treatment for his knee, that he appealed the matter, and that the SCI Bureau Chief concurred with the recommendation of the Bureau Grievance Office ("BGO"). See D.I. 28.

The documents provided by Warden Kearney indicate that Plaintiff exhausted his administrative remedies. Moreover, the Court construes the allegations in the light most favorable to Plaintiff, and he clearly alleges that he exhausted his administrative remedies. Accordingly, the Court will deny CMS, Dr. Burns, and Nurse Francis' Motion To Dismiss on the issue of failure to exhaust administrative remedies.

### C. Personal Involvement/Failure to State a Claim

Warden Kearney argues that the Complaint fails to allege any personal involvement by him and does not contain sufficient allegations to put him on notice of the wrong he allegedly committed. The Complaint alleges that Warden Kearney "also is to blame for the [P]laintiff's pain and suffering. Warden Kearney could have looked into the [C]omplaint about medical long ago. And presented a solution to the problem. Instead his actions were to look the other way." (D.I. 2, at IV.)

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)

-8-

(citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)). Additionally, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d. Cir. 2005).

Plaintiff adequately alleges Warden Kearney's personal involvement. He alleges that Warden Kearney did not look into complaints regarding medical care, but instead "looked the other way." Additionally, the Complaint contains sufficient allegations to apprise Warden Kearney of his alleged wrongdoing. Therefore, the Court will deny Warden Kearney's motion to dismiss on the issues of personal involvement and failure to state a claim.

D. **Medical Needs Claim**

Warden Kearney argues that the Complaint fails to allege his deliberate indifference to a serious medical need and he points to Plaintiff's medical records. Similarly, Dr. Burns and Nurse Francis argue that there are no facts in the Complaint that demonstrate a deliberate indifference toward a serious medical need, and they too, point to Plaintiff's medical records. As discussed, however, those records are not considered when ruling on a motion to dismiss. Warden Kearney also argues that Plaintiff appears to complain of the wisdom or quality of medical treatment provided to him, noting that disagreement with medical treatment cannot form the basis for an Eighth Amendment claim.

The Complaint alleges that Plaintiff suffered a dislocated knee, he presented for medical treatment, was told by an unknown nurse "she saw nothing she could do," and Plaintiff was told to leave. (D.I. 2, at IV.) Thereafter, a correctional officer gave

Plaintiff crutches to use. After a month of complaints, Plaintiff was seen by Nurse Francis and was told x-rays would be ordered. At that time Nurse Francis "took the crutches." Id. Plaintiff had been wearing a knee brace and he was allowed to keep the brace. X-rays were taken and three weeks later Plaintiff was again seen by Nurse Francis who told Plaintiff that nothing could be done for him. The Complaint alleges that a week later Plaintiff's knee popped out and, as directed, he submitted a sick call slip. He was seen by an unknown nurse who did not believe that Plaintiff had knee problems. After submitting sick call slips, Plaintiff was examined by Dr. Burns who explained the x-ray findings to Plaintiff, ordered a new knee brace, and gave Plaintiff 800 mg of Motrin, a pain reliever. Plaintiff alleges the medication does "nothing for the pain." Plaintiff alleges that the "medical staff in this case did not fulfill their duties in providing proper health care to the plaintiff. Resulting in sever [sic] pain and possible long-term damage to the plaintiff's knee."

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that

need.  <u>Estelle v. Gamble</u>, 429 U.S. at 104; <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  <u>Estelle v. Gamble</u>, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable.  <u>Harrison v. Barkley</u>, 219 F.3d 132, 138-140 (2d Cir. 2000).  An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).  Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation.  <u>White v. Napoleon</u>, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); <u>see also</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).  Finally, "mere disagreement as to the proper medical treatment" is insufficient

to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d. Cir. 2004) (citations omitted).

Even when reading the Complaint in the most favorable light to Plaintiff, he fails to state an actionable constitutional claim against Defendants for deliberate indifference to a serious medical need. Rather, the Complaint alleges that Plaintiff received treatment for his knee condition, albeit not to his liking, that according to Plaintiff, results in severe pain and possible long-term damage to his knee. The allegations fall under the aegis of a medical malpractice/negligence claim, rather than deliberate indifference to a serious medical need. Therefore, the Court will grant Warden Kearney, Dr. Burns, and Nurse Francis' Motions to Dismiss on the issue of deliberate indifference to a serious medical need.[3]

### E. Claims against CMS

CMS argues that Plaintiff cannot prove any set of facts to demonstrate that it had a policy or custom that led the medical staff to deprive Plaintiff of necessary medical care. It also argues that in § 1983 claims, it cannot be held responsible for the acts of its employees under a respondeat superior theory.

---

[3]Because there is no proven deliberate indifference to a serious medical need, Plaintiff's § 1983 claim must fail. Hence, the Court will not address Warden Kearney's qualified immunity defense.

The Complaint alleges that CMS is "accountable for the liability involved. Do [sic] to the facts that medical staff members hired were in any way sufficiently qualified to practice this type of responsibility required in medical treatment resulted in negligence of assistance in treatment service to inmates healthcare at SCI." (D.I. 2, at IV.) Plaintiff also alleges that CMS hired "irresponsible and incompetent medical staff" "to over see and assist in treatment of the inmates at SCI." (D.I. 3, at 2-3.)

As discussed above, in order to state an inadequate medical treatment claim under the Eighth Amendment, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. at 104. When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d. Cir. 1989); Miller v. Correctional Medical Systems, Inc., 802 F.Supp. 1126, 1132 (D. Del. 1992). In doing so, Plaintiff must identify a particular policy or practice that CMS failed to enforce and show that: (1) the existing policy or practice created an unreasonable risk of injury; (2) CMS was aware that the unreasonable risk existed; (3) CMS was indifferent to that risk; and (4) Plaintiff's injury result from the policy.

The Complaint adequately alleges that CMS has a policy or practice of hiring unqualified medical personnel who provide negligent medical services. Nonetheless, as discussed above in Section II.D., the Complaint does not state a claim for deliberate indifference to a serious medical need. Therefore, the Court will grant CMS' Motion to Dismiss on the issues of policy or practice and respondeat superior.

F. **Eleventh Amendment Sovereign Immunity**

Warden Kearney correctly argues that the doctrine of sovereign immunity bars suits for monetary damages against state employees in their "official capacities," absent waiver or Congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). There is no evidence that § 1983 intended to effect a Congressional override of state sovereign immunity. The statute has been held not to "provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Section 1983 authorizes suits against "persons," and a suit against a state official is "no different than a suit against a state itself." Id. at 71. "The state itself [is not] a person that Congress intended to be subject to liability." Id. at 68. Also, there is no indication that the State of Delaware has waived or abrogated its sovereign immunity with respect to §

1983 claims. Therefore, the Court will grant Warden Kearney's Motion to Dismiss on the issue of Eleventh Amendment immunity.

### III. DISCOVERY MOTIONS

Pending before the Court are two discovery motions filed by Plaintiff. (D.I. 35, 40.) The Motion For An Order asks the Court to order Defendants to provide documents requested by Plaintiff. (D.I. 35.) The Motion TO Compel/For An Order To Produce All Documents Of Discovery also seeks to compel Defendants to provide discovery requested by Plaintiff. (D.I. 40.) As discussed above, the Complaint does not allege deliberate indifference to a serious medical need, and the Court is granting the Motions to Dismiss filed by Defendants. Accordingly, there is no need for discovery, and therefore, the Court will deny as moot Plaintiff's pending discovery motions.

### IV. CONCLUSION

The Court will grant State Defendant's Motion To Dismiss Pursuant To Rules 12(b)(1) And 12(b)(6) Of The Federal Rules of Civil Procedure (D.I. 27) and Motion Of Defendants, Correctional Medical Services, Dr. Roberta Burns and Nurse Practitioner Francis, To Dismiss Plaintiff's Complaint (D.I. 37). The Court will deny as moot Plaintiff's Motion For An Order (D.I. 35) and Plaintiff's Motion To Compel/For An Order To Produce All Documents Of Discovery (D.I. 40). An appropriate order will be entered.